IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ZORAM SEPULVEDA,<br><br>        Defendant. | Case No. 19-00239-01-CR-W-DGK |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Robert M. Smith, Assistant United States Attorney, and the defendant, Zoram Sepulveda ("the defendant"), represented by Shazzie Naseem.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the Indictment charging him with a violation of 18 U.S.C. § 922(g)(3), that is, being a drug user in possession of a firearm and ammunition. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

On or about June 28, 2019, in the Western District of Missouri, the defendant, knowing he was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, knowingly possessed a firearm and ammunition, to wit: a Glock 23, .40 caliber, automatic pistol, bearing Serial Number LBA626, loaded with 12 rounds of TulAmmo .40 caliber ammunition; and an extended Glock magazine containing 16 rounds of Federal and one (1) round of TulAmmo .40 caliber ammunition, all of which was shipped and transported in interstate commerce in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

More specifically, On June 28, 2019, at approximately 1053 hours, IPD Officer Bateman was conducting speed enforcement in the area of northbound 291 at Truman Road, Independence, Missouri. At that time, Officer Bateman observed a white Ford Focus tailgating a vehicle in the left lane of northbound 291 approaching Truman Road. The Ford Focus started to pass the vehicle in the right lane at which time Officer Bateman used his laser radar device and got a reading that the Ford Focus' speed was 79 MPH in a 50 MPH zone.

Officer Bateman stepped to the side of his marked police motorcycle and placed the laser in his saddlebag while maintaining a visual on the vehicle as it approached. Officer Bateman then got on his motorcycle and began to put the kickstand up. The driver of the Ford Focus made eye contact with Officer Bateman and then attempted to quickly slow and exit onto the Truman Road exit directly behind Officer Bateman's motorcycle.

The Ford Focus was traveling too fast and began to skid in the debris left in the triangle shaped shoulder behind the motorcycle. The Ford Focus came to a stop approximately four feet behind the motorcycle and Officer Bateman put the kickstand down and dismounted from the motorcycle and quickly approached the vehicle on the passenger side. The window was down and the driver, the defendant, was the sole occupant.

Upon making contact, Officer Bateman observed a silver revolver in the defendant's left hand and a Glock handgun lying on his right leg. Officer Bateman drew his sidearm and ordered the defendant to put his hands on the steering wheel. The defendant dropped the revolver onto his lap and looked at Officer Bateman while keeping both hands open inches above the firearms. Officer Bateman ordered the defendant a second time to put his hands on the steering wheel and he did not comply. The defendant then quickly reached for the shifter and placed the vehicle in gear and took off northbound on 291.

Officer Bateman got back onto his motorcycle and pursued the Focus. The Focus cut in front of traffic and then drove on the right shoulder passing vehicles. Officer Bateman accelerated to approximately 75 mph as the Focus took the next right turn onto Independence Avenue.

The Focus fled into the GEO Space industrial facility (the "caves"). Officer Bateman terminated the pursuit inside of the caves after he lost radio signal and was unable to make contact with dispatch or other officers. A perimeter was established around the GEO Space facility and the structure was placed on lockdown. Every entrance/exit to the facility was covered by officers with the Independence, Missouri Police Department, K-9 Units from the Jackson County, Missouri, Sheriff's Office and the Oak Grove, Missouri Police Department. All vehicles leaving the facility were checked while search teams entered the facility to search for the defendant.

A maintenance worker advised that he had observed an individual matching the defendant's description running north near the interior address of 3011 E. Officers responded to that area and located the white Ford Focus abandoned and still running at bay 3011 E Dock 7.

At approximately 1128 hours, the defendant approached the Salisbury Road exit to the caves. He was wearing black shorts and black Nike tennis shoes and no shirt and was sweating profusely. Officer Bateman also responded and positively identified Sepulveda.

A police tow was ordered for the white Ford Focus and an inventory was conducted. During the inventory, neither of the firearms observed by Officer Bateman were located. A backpack was located in the back passenger side seat of the vehicle. Officers found a Glock extended magazine containing 17 rounds of .40 caliber ammunition in the main compartment of the backpack.

SWAT Officer Smith was searching the area between the vehicle that the defendant had abandoned and the Salisbury exit. While checking a tractor trailer backed into the docks at 4109 E (Dock 12), he observed what appeared to be a phone charging cable on the ground along with items of trash from Hardees. Upon closer inspection, Officer Smith observed the hat and grey shirt, as described by Officer Bateman, shoved up into the frame by the rear axles of the truck. In surveillance video from the caves, the defendant can be observed carrying what appears to be a brown paper bag consistent with the Hardees bag.

Officers then conducted a search for the firearms between the area that the vehicle was abandoned by Sepulveda (3011 E, Docks 7-8) and where his shirt and hat were located (4109 E, Docks 12-13). On the route traveled by the defendant,

3

Detective Baker located a Glock firearm inside the housing for two large industrial ventilation fans. The firearm was a Glock 23, .40 caliber semi-automatic pistol with Serial Number LBA626. The firearm had "IPD" stamped on the slide. The firearm was loaded with 12 rounds of ammunition. All of the rounds in the firearm were the same and they all matched one (1) round that was in the extended magazine recovered from the abandoned vehicle. The revolver was never located.

During the defendant's intake at the IPD detention facility, Detention Officer Simmons located a small zip-lock baggie containing a white powdery substance inside of the defendant's wallet. Detective Cook recovered the substance and Detective Leach conducted a TruNarc scan of the substance which showed positive for methamphetamine. The approximate field weight of the substance was 1.55 grams.

On June 29, 2019, at approximately 0751 hours, Detective Cook conducted an interview with the defendant. The defendant was advised of and waived his *Miranda* rights. He admitted to being a drug user since he graduated from high school in 2007. The defendant further admitted that he smokes methamphetamine and that he last used methamphetamine on June 28, 2019.

Supervisory Special Agent Matthew Wilson with the Bureau of Alcohol, Tobacco, Firearms and Explosives, advised the Glock 23 and ammunition recovered were manufactured in the State of Missouri, and therefore, would have traveled across state lines before the defendant's possession.

The Glock 23 was test fired by IPD crime lab and determined to be a fully-automatic handgun, and upon examination, an auto sear had been installed on the rear exterior of the slide.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant

4

conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Indictment charging him with being a drug user in possession of firearms and ammunition, the maximum penalty the Court may impose is not more than 10 years of imprisonment, a $250,000 fine, three years of supervised release, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

5

  e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

  f. any sentence of imprisonment imposed by the Court will not allow for parole;

  g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

  h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

  7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the conduct outlined in Paragraph 3 for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts Two and Three at sentencing.

  The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

  The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the

6

initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting

the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2K2.1(a)(4), which provides for a base offense level of 20;

   c. The parties agree the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) due to the defendant's possession of methamphetamine as described in Paragraph 3;

   d. The parties agree the two-level enhancement under U.S.S.G. § 3C1.2 due to the defendant's flight from law enforcement as described in Paragraph 3;

   e. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

   f. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

g. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

h. The United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and defendant agrees to not seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties to not seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

i. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

j. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

9

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the Indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

  c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

  d. the right to confront and cross-examine the witnesses who testify against him;

  e. the right to compel or subpoena witnesses to appear on his behalf; and

  f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **<u>Waiver of Appellate and Post-Conviction Rights</u>.**

  a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

  b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as

authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant willfully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with

this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Timothy A. Garrison
United States Attorney

Dated: 10/13/2020

_/s/ Robert M. Smith_
Robert M. Smith
Assistant United States Attorney
Violent Crime & Drug Trafficking Unit

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 10-13-2020

Zoram Sepulveda
Defendant

I am defendant Zoram Sepulveda's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Zoram Sepulveda's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 10-13-2020

Shazzie Naseem
Attorney for Defendant Zoram Sepulveda

16